## 2377. FLORENCE WAGON WORKS *v.* SALMON.

1. Whether a fixed sum designated in a contract, to be paid in the event of a breach thereof, is to be considered as penalty, or as stipulated damages, depends upon the nature of the agreement and upon the intent of the parties, as evidenced by the agreement, construed in the light of its subject-matter and of the circumstances under which it was made.

2. Where a designated sum is inserted into a contract for the purpose of deterring one or both of the parties from breaching it, it is penalty. Where it is inserted as the result of a bona fide effort of the parties to liquidate in advance and agree upon the sum that should represent the damages which would be actually sustained in event of a breach, it will be upheld and enforced (unless unconscionable or oppressive), especially· in cases where the damages can not be readily estimated according to some legal standard or measure of damage.

3. Where, to secure the performance of the terms of a contract, there is a stipulation for the payment of a fixed, unvarying sum upon the breach thereof by one of the parties, irrespective of the time of the breach, and it appears that the amount of the damages which would result from a breach would be controlled mainly by the time at which the breach occurred, the stipulation is prima facie a penalty.

DECIDED SEPTEMBER 6, 1910.

Action for breach of contract; from city court of Floyd county—Judge Hamilton. December 13, 1909.

*Lipscomb, Willingham & Doyal,* for plaintiff.

*John W. & G. E. Maddox,* for defendant.

POWELL, J. On March 24, 1908, Salmon, the defendant, gave an order to the plaintiff, through its traveling salesman, for certain wagons, at the price of $1,247.90. The written order contained a printed condition that "in case this order is countermanded, a payment of fifteen per cent. of the amount of the order shall be made by you [referring to the purchaser], as agreed, and as liquidated damages." The wagons were at that time made up and in the stock of the wagon works, and were to be shipped to Salmon on the 15th of the following July. On April 6 Salmon notified the wagon works to cancel the order, and the wagons were never delivered. Plaintiff brought suit to recover the fifteen per cent. referred to as liquidated damages. The evidence showed that though the defendant signed the order and thereby subscribed to the agreement to pay fifteen per cent. as liquidated damages for a countermand of the order, he was not in fact aware of such a condition in the order. After hearing the evidence, the court directed a verdict for the defendant, and the plaintiff has excepted.

The main point at issue in this case is whether the fifteen per cent. stipulated as a forfeit for the cancellation of the contract is to be treated as a penalty, or as liquidated damages. It is called in the contract, "liquidated damages." However, "no form of words is controlling. But the fundamental rule, so often announced, is that the construction of these stipulations depends, in each case, upon the intent of the parties, as evidenced by the entire agreement, construed in the light of the circumstances under which it was made." Sutherland on Damages, 717. See also *Newman* v. *Wolfson,* 69 *Ga.* 764; *Allison* v. *Dunwody,* 100 *Ga.* 51 (28 S. E. 651); *Sutton* v. *Howard,* 33 *Ga.* 536; *Mayor and Council of Brunswick* v. *Ætna Indemnity Co.,* 4 *Ga. App.* 722 (62 S. E. 475); 13

Cyc. 90. From this it is seen that there is no hard and fast rule for the determination of such cases, but that each case must be decided independently, upon its own merits, and considered in the light of the circumstances surrounding it.

In determining whether a designated sum that is to be paid to one party in the event that the other breaches the contract is a penalty, we must ascertain whether it was inserted for the purpose of deterring the party from breaching his contract, and of penalizing him in the event he should do so, or whether it was a sum which the parties in good faith agreed upon as representing those damages which would ensue if the contract should be breached. If A borrows $100 from B, agreeing that if he does not repay it by October 1, he will pay $1 per day as liquidated damages for the detention thereof, this is plainly a penalty, an attempt to coerce prompt performance of the contract, rather than an attempt to estimate what the legal damage to B will be; for the law fixes the legal damages in such a case at the lawful rate of interest. On the other hand, if A agrees to furnish B a particular piece of property or a commodity, by a particular time, for some special use, and the parties know and understand that if the property or commodity is not furnished promptly by the date named, B will suffer a damage which it would be difficult to estimate, and which could not be reasonably measured by merely allowing him the difference between the contract price and the market price of the property, and they should in advance attempt to estimate what this damage would be, and should agree upon a certain sum, reasonable in amount, not for the purpose of deterring A from breaching the contract, but for the purpose of fully compensating B for the damage he would sustain, the contract would be upheld as an agreement for liquidated damages. Again, a person being solicited to make a contract may foresee that he may not be able to perform it, or may be unwilling to make the contract, if by so doing he would place himself in a position where, upon his failure to comply, the opposite party would be able in law to hold him to a large sum of money on account of the breach. In such cases the parties may agree that in the event the promisor fails to comply with his promise, the opposite party shall not hold him to the payment of all ordinary damages legally estimable, but will hold him only for some stipulated, designated amount; and in such a case the amount so agreed upon would not

be a penalty, but would be stipulated or liquidated damages. Where the contract relates to a subject as to which the law has a fixed or reasonably definite rule for the ascertainment of damages, and the parties in advance attempt to stipulate the amount, especially where the amount is in excess of what the damages ordinarily would be when estimated according to the law's measure, the stipulated amount is generally held to be penalty. In a contract for the purchase of merchandise, the law has a reasonably definite measure of damage to apply in the event of a cancellation. Consequently, where it is agreed that if the purchaser cancels the contract, he will pay a designated sum, the courts incline to the view that this provision is inserted into the contract for the purpose of deterring the purchaser from cancelling, rather than to compensate the seller for the damages which he would sustain. We do not, however, regard the ease or certainty with which the damages in such cases may be measured as conclusive of the proposition that the stipulated sum to be paid in the event of a cancellation of the contract would be penalty.

Let us consider the nature of the present contract, with a view of ascertaining whether the parties inserted this stipulation for the purpose of deterring the purchaser from cancelling, or for the purpose of compensating the seller for the damages that would ensue in the event of a cancellation. It can readily be seen that if notice of the purchaser's intention to cancel had been given on the day after the contract was made, the damage to the seller would in all probability have been less than if he had waited until the seller had gone to the trouble and expense of getting the wagons together and of packing them and preparing them for shipment, and yet the contract makes no difference between the effect of a cancellation received at one time and the effect of a cancellation received at a time when, in the nature of things, the damages would have been wholly different. As a matter of fact, in the present case the notice of the cancellation was received at a time when the plaintiff had suffered no damage at all,—at a time when there was no difference between the contract price and the market price of the wagons, and when the plaintiff had taken no action on the order, further than to enter it upon his books; and yet the plaintiff says that he should be allowed to recover, on account of the anticipatory breach thus made, as if the cancellation had not been received until there had

been a sharp falling off in the market price of wagons, or until after he had gone to great trouble and expense toward getting the shipment ready for delivery. The principle, therefore, which in this case declares the stipulation to be a penalty, rather than liquidated damages, is akin to that mentioned in the case of *Mayor and Council of Brunswick* v. *Ætna Indemnity Co.*, supra, that "where, to secure the performance of the terms of a contract, there is a stipulation for the payment of a fixed, unvarying sum, upon the breach of any of several promises of varying degrees of importance, . . . the sum named will be construed to be a penalty." In that case the stipulation was for the payment of a fixed sum for the breach of any one of several promises of varying degrees of importance, while in the present case the fixed sum was to be paid upon the breach of a single promise, without regard to the date of the breach, when, in the nature of things, the date of the breach would be all-important in determining the element of actual damage which would ensue. The Supreme Court of the plaintiff's own State has recognized this principle of construction, in the case of Mansur Co. v. Tissier Co., 136 Ala. 597 (33 So. 818), a case involving a stipulation for the payment of a fixed sum upon the purchaser's countermanding an order for vehicles.

The contention of the plaintiff that the sum designated in the contract can be regarded as an agreed compensation to be paid to it on account of the cancellation, as compensating it for the expense it incurred in procuring the order through its traveling salesman, is not well taken. The expense which a seller incurs in inducing a prospective purchaser to make an offer to buy is not a part of the damage, in the event the purchaser makes the contract and then fails to take the goods. It will readily be seen that in such cases the sums expended in inducing the contract of purchase are not a part of the damages, when we consider the fact that if the purchaser had refused to make the contract, the seller would, nevertheless, have incurred the same expense.

Having held that the contract on its face apparently calls for a penalty, and there being nothing in the evidence to contradict this, the fact that the court admitted evidence on behalf of the defendant to corroborate this theory becomes immaterial. The defendant was entitled to a judgment in his favor, irrespective of the oral testimony which the court allowed him to introduce.

As an abstract proposition, the plaintiff would have been entitled to recover nominal damages on account of the defendant's breach, but as he did not sue upon any theory admitting of such recovery, the court did not err in directing the verdict against him. *Christophulos Café Co.* v. *Phillips,* 4 *Ga. App.* 819 (62 S. E. 562).

*Judgment affirmed.*